# In the United States Court of Federal Claims

No. 15-1550C
(Bid Protest)
(Filed: April 7, 2016)[1]

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | Post-award Bid Protest; 28 U.S.C. |
| | * | § 1491(b)(1); Small Business Concern; Key |
| **LAWSON ENVIRONMENTAL** | * | Personnel; Pass/Fail Technical |
| **SERVICES, LLC,** | * | Requirement; Responsiveness; |
| | * | Responsibility Determination; Referral to |
| **Plaintiff,** | * | Small Business Administration for |
| | * | Certificate of Competency; HUBZone |
| v. | * | Residency Requirement. |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Theodore P. Watson, Watson & Associates, LLC, 13721 East Rice Place, Suite 106, Aurora, Colorado 80015, for Plaintiff.

Benjamin C. Mizer, Robert E. Kirschman, Jr., Douglas K. Mickle, and Michael D. Snyder, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Kathleen Clever, U.S. Environmental Protection Agency, 11201 Renner Blvd., Lenexa, KS 66219, Of Counsel. Christopher J. McClintock, U.S. Small Business Administration, 409 3rd Street NW, Washington, D.C. 20416, Of Counsel.

---

**OPINION AND ORDER**

---

**WILLIAMS**, Judge.

This post-award bid protest comes before the Court on the parties' cross-motions for judgment on the Administrative Record ("AR"). Plaintiff, Lawson Environmental Services, LLC ("Lawson"), challenges the Environmental Protection Agency's ("EPA") award of a contract to Coastal-Enviroworks Joint Venture ("Coastal-Enviroworks") for environmental remediation

---

[1] The Court issued this Order under seal on March 21, 2016, and directed the parties to file proposed redactions by March 28, 2016. The Court publishes this Opinion indicating redactions and correcting errata. Redactions are indicated by asterisks [***].

services in lead-contaminated residential properties in Washington County, Missouri, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Plaintiff claims that EPA unlawfully referred Coastal-Enviroworks to the Small Business Administration ("SBA") for a Certificate of Competency ("COC") determination instead of rejecting Coastal-Enviroworks' technical proposal as nonresponsive. In the alternative, Plaintiff argues that, in referring Coastal-Enviroworks' proposal to SBA for a COC responsibility determination, EPA both improperly provided SBA with information the agency failed to consider and withheld relevant information from SBA. Finally, Plaintiff contends that SBA erred in issuing Coastal-Enviroworks a COC.

The Court denies the protest. Because EPA determined that Coastal-Enviroworks, a small business concern, failed a technical pass/fail requirement that was also a responsibility factor - - the staffing capability to perform the contract - - EPA was required to refer the matter to SBA for a Certificate of Competency determination. Plaintiff's remaining challenges to the award fail, as EPA submitted proper evidence to SBA and SBA reasonably exercised its discretion in granting Coastal-Enviroworks a COC.

## **Findings of Fact**[2]

### **The Solicitation**

On July 8, 2014, EPA issued Solicitation Number SOL-R7-14-00008 for environmental remediation services of residential properties at three lead-contaminated sites in the Washington County Lead District in Missouri, pursuant to CERCLA. AR 4, 82. The remediation services entailed the excavation and relocation of lead-contaminated materials - - including mine waste, soil, gravel, crushed rock, vegetation, root balls, and deteriorated landscaping - - and the restoration of the properties. AR 82. Award was to be made to a small business employing people in a Historically Underutilized Business Zone ("HUBZone"). AR 40-42. In a presolicitation notice published on FedBizOpps.gov on March 26, 2014, EPA indicated that the estimated value for this procurement was between $30 and $35 million. AR 1.

The Solicitation contemplated award of an indefinite-quantity fixed unit-price contract with "incentives and negative incentives" to the lowest priced, technically acceptable offeror. AR 68, 75. To be technically acceptable, an offeror had to satisfy four technical evaluation criteria on a pass/fail basis: Corporate Experience, Key Personnel, Past Performance, and Project Management Plan. AR 72-73.

Factor 2, "Key Personnel," included the following requirements:

> To be deemed technically acceptable, resumes of all key personnel shall be employees of the Prime Contractor or be accompanied by a letter of intent to hire by the Prime Contractor upon contract award. Offeror will be evaluated in accordance with the following:

> \* \* \*

---

[2] These findings of fact are derived from the Administrative Record. Additional findings of fact are in the Discussion.

> The **Site Superintendent** (SS) is the on-site point person overseeing all the project work and is required to be on-site throughout the project while work is occurring.

AR 76 (emphasis in original).

The Solicitation further required that the Site Superintendent have:

- At least 3 years' experience as an SS in residential earth moving and managing and supervising hazardous cleanup personnel. The years of required experience for each of the categories can be demonstrated on separate contracts or combined on a single contract (i.e., if the SS worked for 3 years under a contract where residential earthmoving involving an environmental hazardous waste both occurred, the SS has met the 3 year requirement).

-  Experience managing and supervising professional and laborer hazardous cleanup personnel for at least three years.

AR 76-77.

The Solicitation contained FAR Clause 52.219-3, "Notice of HUBZone set-aside or sole source award." AR 40-42. Paragraph (c) of that clause required that a prospective awardee be a HUBZone small business concern at the time of offer. AR 41. Paragraph (g) of that clause required that a prospective HUBZone awardee be a HUBZone small business concern at the time of award. AR 42. As a HUBZone set-aside, the Solicitation required that at least 35% of the small business concern's employees reside in a HUBZone. 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa) (2012); 13 C.F.R. § 126.200(b)(4) (2005).

Source selection was to be conducted in accordance with FAR Part 15 and EPA Source Evaluation and Selection Procedures in EPAAR (EPA Acquisition Regulation) Part 1515 (48 CFR Part 1515), and the responsibility criteria in FAR Part 9. AR 75.

**Offers**

Three offerors timely submitted proposals in response to the Solicitation: Lawson, Coastal-Enviroworks, and Integrated Environmental Solutions ("IES"). AR 872. For the technical evaluation criterion "Key Personnel," Coastal-Enviroworks listed [***] as its Site Superintendent. AR 388. [***] resume indicated that he worked for Enviroworks (one of Coastal-Enviroworks' joint venture partners) for a total of nine years from "2006-present." AR 389. Along with [***] resume, Coastal-Enviroworks submitted a Letter of Commitment for this Solicitation, dated August 19, 2014, indicating that [***] was committed to working as the Site Superintendent if Coastal-Enviroworks were awarded the contract. AR 391. The letter, signed by [***], stated:

> This letter assures your commitment to Coastal-Enviroworks JV that should we become successful in obtaining the [contract], you will be available to begin employment upon execution of the referenced contract.

* * *

> I understand my commitment to employment with Coastal-Enviroworks JV for the [contract], conditional upon award of said contract, and agree to the terms and conditions set forth in this letter.

Id.

The resumes Lawson provided for its four proposed key personnel indicated that all four key personnel were permanent employees of Lawson. AR 543-59. Lawson's proposed Site Superintendent began working at Lawson in 2011, and had previously served as the Site Superintendent for other Lawson contracts. AR 549-50.

**Award to Integrated Environmental Solutions and GAO Protests**

EPA initially awarded the contract to the lowest priced offeror, IES, without discussions, on September 24, 2014. AR 914. Following the award to IES, Lawson initiated a protest with the Government Accountability Office ("GAO") on October 6, 2014, challenging IES' technical acceptability on Factors 1, 2, and 3 - - Corporate Experience, Key Personnel, and Past Performance. AR 1089-96. Coastal-Enviroworks also filed a GAO protest on October 7, 2014, challenging IES' technical acceptability on Factors 1 and 3 - - Corporate Experience and Past Performance. AR 1097-1117. Coastal-Enviroworks filed a supplemental protest on November 17, 2014, challenging IES' compliance with HUBZone's limitations on subcontracting. AR 1122-35.

**Corrective Action**

Based on the information provided by Coastal-Enviroworks during the protest, EPA sua sponte decided to take corrective action. AR 1155-56. EPA terminated IES' contract prior to work beginning and reevaluated its proposal. AR 1157. Upon reevaluation of IES' proposal, the TEP found that IES failed on Factor 1, Corporate Experience. AR 1164. The Contracting Officer submitted IES' proposal to SBA for a Certificate of Competency decision, but on January 29, 2015, SBA declined to issue a COC to IES. AR 1165. IES filed a protest with GAO on February 16, 2015, challenging SBA's denial of the COC. AR 1166-71. GAO dismissed IES' protest on March 31, 2015, for lack of jurisdiction over SBA's responsibility determination. AR 1172-74.

**Award to Coastal-Enviroworks**

On April 14, 2015, Procurement Contracting Officer Tyrone Lewis issued an Addendum to his Source Selection Decision, recommending that the Source Selection Authority award the contract to Coastal-Enviroworks. AR 1175-86. In the addendum, CO Lewis noted that Coastal-Enviroworks had proposed the lowest price, and that while the joint venture itself was not certified as a HUBZone small business concern, each firm comprising the joint venture was HUBZone certified. AR 1182-83. CO Lewis determined Coastal-Enviroworks to be a responsible offeror "whose offer conforms to the solicitation, represents the lowest price that is technically acceptable, and therefore represents the best value to the Government." On April 21, 2015, the Source Selection Authority, Jeanne Poovey, Manager of the Office of Acquisition

Management for EPA, approved CO Lewis' recommendation. AR 1188. Coastal-Enviroworks was awarded the contract on May 27, 2015. AR 1197.

**Lawson's HUBZone Protest**

On June 2, 2015, Lawson timely submitted a protest to CO Lewis, alleging that Enviroworks, one of Coastal-Enviroworks' joint venture partners, did not meet the employee residency requirement to qualify as a HUBZone. AR 1361-62. The HUBZone Act and the implementing regulations require that at least 35% of a HUBZone small business concern's employees reside in a HUBZone - - any HUBZone, not necessarily the HUBZone where the small business concern has its principal office. 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa). According to Lawson, Enviroworks was so closely affiliated with two other non-HUBZone concerns that the affiliates' employees should have been attributed to Enviroworks for the purpose of determining its employees' HUBZone residency status. Taking these affiliates' employees into account would have reduced the percentage of HUBZone residents employed by Enviroworks to well below the 35% requirement. AR 1363.

After conducting an investigation and reviewing Enviroworks' response to SBA's requests for documents, which included payroll records, federal income tax returns, and a declaration from Marcos Mateus, President of Enviroworks, SBA's HUBZone director denied Lawson's protest on July 1, 2015, finding that there was "a clear line of fracture between Enviroworks and [its affiliates . . .]." AR 1535-36, 1540. SBA found that because four of Enviroworks' 11 employees resided in a HUBZone on August 20, 2014, Enviroworks met the 35% residency requirement at the time of offer. AR 1540. Because five of Enviroworks' 10 employees resided in a HUBZone on May 27, 2015, Enviroworks met the 35% residency requirement at the time of award. AR 1541.

**Lawson's Appeal of SBA's Denial of Its HUBZone Protest**

On July 8, 2015, Lawson appealed SBA's denial of Lawson's HUBZone protest against Enviroworks to the Associate Administrator for Government Contracting and Business Development - - the office designated to receive HUBZone appeals under SBA regulations. AR 1546; 13 C.F.R. § 126.805 (2011). In its appeal, Lawson alleged that Enviroworks used undocumented workers in its residency calculations and that, without the undocumented workers, Enviroworks would not meet the 35% HUBZone residency requirement. AR 1546.

Lawson claimed that three of Enviroworks' employees were undocumented workers, stating:

> Three [] Enviroworks employees were found by Homeland Security to be undocumented workers . . . and use of these individuals should not have been calculated in determining whether or not Enviroworks met the Hubzone residency requirements.

AR 1547-50.

In support of this allegation, Lawson attached an October 9, 2013 letter from the Department of Homeland Security ("DHS") titled "Notice of Suspect Documents," informing Lawson that, as a result of an investigation into Lawson's own compliance with immigration

employment laws, it appeared that three of Lawson's employees were not authorized to work in the United States. AR 1549. Lawson alleged that these same three Lawson employees were then employed by Enviroworks and listed as living in a HUBZone. AR 1547. Lawson also attached its October 22, 2013 response to DHS, indicating that the three employees left Lawson's employ following the initiation of DHS' investigation. AR 1552.

On August 3, 2015, SBA issued a final decision denying Lawson's appeal, stating that SBA would only re-examine a decision on a HUBZone protest "if there was a clear and significant error in the processing of the protest, or if the determination failed completely to consider a significant fact contained within the information supplied by the protester or protested concern." AR 1590. With respect to Lawson's allegations of Enviroworks' undocumented workers, SBA stated in a footnote:

> Enviroworks' records show that an individual with the same name as one of the three alleged unauthorized workers worked for Enviroworks at the time of offer and no one with the name as any of the three alleged undocumented workers worked for Enviroworks at the time of award. Furthermore, the October 9, 2013 letter [Lawson] provided, states that the workers may not have proper documentation. SBA does not have the authority to make immigration decisions, and an SBA status protest is not the proper forum to adjudicate the eligibility of various individuals to work in the United States.

AR 1590.

**Lawson's Agency-Level Protest**

On June 5, 2015, during the pendency of its HUBZone protest, Lawson filed an agency-level protest challenging EPA's May 27, 2015 award to Coastal-Enviroworks. AR 1391-92. In the agency protest, Lawson alleged that Coastal-Enviroworks knowingly submitted false information regarding [***] in its proposal in an effort to mislead EPA, that accepting such false information would result in a violation of the False Claims Act, and that Coastal-Enviroworks engaged in a "bait and switch" of key personnel, rendering Coastal-Enviroworks technically unacceptable on Factor 2, "Key Personnel." AR 1393-96. Lawson represented:

> [T]he Awardee Coastal-Enviroworks JV proposed [***] as a member of their Key Personnel (possibly their Project Superintendent). [***] did not agree to or accept being listed as key personnel for the Awardee. (Exhibit A). At all times material hereto, [***] was an employee of Lawson, not the Awardee. (Exhibit B). [***] is still employed by Lawson to this day. (Id.)
>
> As such, the Awardee's misrepresentations of material facts renders their proposal technically unacceptable.

AR 1393.

"Exhibit A" to Lawson's agency protest was a declaration from [***], dated March 20, 2015, stating:

6

> To whom it may concern: I, [***] did not give my permission or sign a letter of intent to be employed by Enviroworks, L.L.C. for the Washington County Lead Project. Any documentation stating or indicating otherwise has been fraudulently prepared.

AR 1402 ([***] Decl., Mar. 20, 2015). "Exhibit B" to this protest was an undated declaration from Cecil Lawson, President and CEO of Lawson Environmental Services, LLC, that read:

> I, Cecil Lawson swear that [***] has been and continues to be employed by Lawson Environmental Service since July 1st, 2013 at which time he resigned from Enviroworks.

AR 1403.

On June 9, 2015, Lawson provided the CO with a photocopy of [***] driver's license, payroll records for [***] for the period of July 5, 2013 through June 5, 2015, and an affidavit from [***], dated June 9, 2015. AR 1409-47. In this affidavit, [***] stated:

> I, [***] did not give my permission nor sign a letter of intent or commitment in August 2014 agreeing to work for Coastal-Enviroworks JV in the event it was successful in receiving the award for the Washington County Lead Project. Any documentation stating or indicating otherwise has been fraudulently prepared.

AR 1409 ([***], June 9, 2015).

On June 8, 2015, CO Lewis wrote to Richard Silva, the managing partner of Coastal-Enviroworks, asking him to provide detailed documentation regarding [***] employment history. On June 18, 2015, Coastal-Enviroworks responded to the CO's inquiry, submitting an affidavit from Marcos Mateus, President of Enviroworks, stating that [***] worked for Enviroworks for four years, from 2009 until July 12, 2013. AR 1484 (Mateus Aff. ¶ 5, June 18, 2015). Mr. Mateus further testified that when [***] voluntarily left Enviroworks to become an employee of Lawson in July 2013, [***] told him that he wanted to return to work for Enviroworks on the Washington County Lead District project. Id. (Mateus Aff. ¶¶ 6-9, June 18, 2015). Mr. Mateus stated that as Enviroworks and Coastal were forming a joint venture in order to bid on the Washington County Lead District Solicitation, "[***] repeatedly expressed his interest in working for Enviroworks/CE JV on the Washington County project." AR 1485 (Mateus Aff. ¶ 12, June 18, 2015).

Coastal-Enviroworks also provided the CO with an affidavit from Jose Cardenas, an Enviroworks employee, stating that he "spoke to [***] repeatedly on the phone about him working for Enviroworks as the Site Superintendent for the Coastal-Enviroworks Joint Venture." AR 1522 (Cardenas Aff. ¶ 4, June 18, 2015). Mr. Cardenas testified that during these conversations, "[***] stated multiple times to [him] that if Coastal-Enviroworks Joint Venture was awarded the Washington County project," [***] "would come back to work for Enviroworks and the Coastal-Enviroworks Joint Venture." Id. (Cardenas Aff. ¶ 5, June 18, 2015). Finally, Coastal-Enviroworks provided the CO with an affidavit from Arturo Flores, an Enviroworks employee, stating that he spoke to [***] in person and that [***] "gave Enviroworks permission to

7

sign the commitment letter on his behalf for the Site Superintendent position for the RFP." AR 1520 (Flores Aff. ¶ 8, June 18, 2015).

With regard to the resume that Coastal-Enviroworks provided for [***] in its Technical Proposal, Mr. Mateus testified in his affidavit:

> As a result of the [EPA's] inquiry, I now realize that [Coastal-Enviroworks] listed [***] as presently employed by Enviroworks at the time of proposal submission. That was an oversight. [***] was not an employee of Enviroworks in August 2014. We used the same resume for [***] in [Coastal-Enviroworks'] 2014 RFP response as Enviroworks' 2013 RFP response [for a different contract] (when [***] was still an Enviroworks employee). However, even though [***] was not an employee of Enviroworks at the time [Coastal-Enviroworks] submitted its proposal for the 2014 RFP, [Coastal-Enviroworks] identified him in good faith as our Site Superintendent based on [***] expressed commitment to the position and [Coastal-Enviroworks].

AR 1485-86 (Mateus Aff. ¶ 17, June 18, 2015). Mr. Mateus further expressed his belief that, if [***] were to leave Lawson, [***] "would be concerned about the impact that would have on his wife and family who work there." AR 1489 (Mateus Aff. ¶ 38, June 18, 2015).

**EPA's Grant of Lawson's Agency Protest and Reevaluation of Coastal-Enviroworks' Proposal**

On July 10, 2015, EPA sustained Lawson's agency-level protest. AR 1554-56. EPA declined to address the False Claims Act allegation or the contention that EPA improperly evaluated Coastal-Enviroworks' proposal with respect to "Key Personnel." AR 1555. However, EPA found that the two errors in [***] resume - - stating that he was a current employee, when in fact he was a former employee and that he had been employed by the firm for nine years, since 2006, when in fact he had been employed by the firm for four years, 2009-2013 - - "cast doubt on the authenticity and accuracy of the resume as a whole." Id.

Further, with respect to the allegedly forged signature on the letter of commitment, EPA found:

> The Agency was led to believe that the proposed employee signed the letter. If all that was required was for an offeror to say they plan to hire someone as a key employee, the solicitation would not have specifically required either current employment or a letter of intent. The purpose of that requirement, while such a letter need not be detailed, set forth salary or constitute a binding contract, is to show that the individual has actually been contacted about working in the specified capacity with an offeror, and has agreed with enough certainty to tender a letter of intent that s/he plans to accept employment in the event of a contract award to the offeror. To ignore the inaccuracies in the resume and the fact that the individual did not sign the letter (which was not disclosed to the Agency) would be to render the key personnel terms of the solicitation meaningless. The Agency will not disregard or eviscerate the clear terms of its solicitation.

AR 1556 (emphasis in original) (footnote omitted).  EPA sustained the agency protest and terminated Coastal-Enviroworks' contract for convenience on July 15, 2015.  AR 1557.

On July 20, 2015, CO Lewis informed the TEP that, based upon new information brought to light during the agency protest, it would need to reconvene to reevaluate Coastal-Enviroworks' proposal.  AR 1560.  On July 29, 2015, the TEP announced that Coastal-Enviroworks' proposal was not technically acceptable. AR 1561.  In the reevaluation, the TEP gave Coastal-Enviroworks a rating of "fail" for Factor 2, "Key Personnel." AR 1563.  The TEP stated:

> The Coastal-Enviroworks JV proposal has failed to meet all the solicitation requirements relative to key personnel.  The TEP agreed that <u>review of the new information received following a bid protest disqualified the proposed SS from consideration on this project</u>.

AR 1564 (emphasis added).

Shortly after the July 29, 2015 reevaluation, on August 2, 2015, Coastal-Enviroworks sent CO Lewis a third affidavit signed by [***].  AR 1586.  In this new affidavit, [***] stated:

> 3. I authorized my name to be signed on my behalf, as I was unavailable at the time, on the Letter of Commitment (Exhibit 1) and intend to fulfill my commitment to Coastal-Enviroworks JV to become an employee and serve as the Site Superintendent upon award to Coastal-Enviroworks JV of the [contract].
>
> 4. That in the "Decision on Agency Level Protest Filed by Lawson Environmental Service LL[C]," dated July 10, 2015, it was stated that in reference to my resume concerning the dates of employment, "These major material inaccuracies cast doubt on the authenticity and accuracy of the resume as a whole . . . ;" I therefore, state in the affirmative that the remainder, excluding the addressed inaccuracies in the Decision, are true and accurate.
>
> 5. That I was under duress from my employer, Lawson Environmental Service LLC, to sign a notarized statement that I did not give my consent concerning the Letter of Commitment that was provided by the Coastal-Enviroworks JV in Tab B, Factor 2 – Key Personnel in order to maintain my position with Lawson Environmental Service LLC.
>
> 6. As of the date of this Affidavit I recant my statements made to the USEPA in the protest packet submitted by Lawson Environmental Services regarding the award of SOL-R7-14-00008 to the Coastal-Enviroworks, JV.

Id. ([***] ¶¶ 3-6, Aug. 2, 2015).

**EPA's Referral of Coastal-Enviroworks to SBA for a COC Determination**

Following the TEP's July 29, 2015 determination that Coastal-Enviroworks failed the Key Personnel factor of the Solicitation, CO Lewis referred Coastal-Enviroworks' technical proposal to SBA for a Certificate of Competency determination. AR 1594-96. In his August 25, 2015 referral letter, CO Lewis wrote:

> Coastal-Enviroworks Joint Venture failed a required technical factor and therefore lacks a critical element of responsibility for this project. It did not provide a proper letter of intent to hire key personnel as required and clearly stated in the solicitation. The CO's determination of nonresponsibility is referred to SBA.

AR 1602. CO Lewis attached documentation of the procurement to his referral letter, including [***] August 2, 2015 affidavit, in which he recanted his June 9, 2015 affidavit submitted in the agency protest and committed to work as Coastal-Enviroworks' Site Superintendent after all. AR 1605-2193.

**Coastal-Enviroworks' Certificate of Competency and Award**

On September 18, 2015, SBA issued a Certificate of Competency to Coastal-Enviroworks. AR 2195. SBA reasoned:

> The firm has demonstrated the technical ability to perform on this procurement. Plant, facilities, and equipment factors are favorable. Material availability/subcontractor support has been determined to be acceptable. The intended site superintendent has confirmed that he gave permission to the applicant to use his resume and to sign the letter of intent on his behalf. Furthermore, he will be the site superintendent if the applicant were to receive the contract award. The firm can meet all quality control requirements of the proposed contract. Performance record is satisfactory. Planning for this contract has been reviewed, found to be attainable, and demonstrates ability to meet all required delivery dates. Cost analysis indicates realistic estimates for contract performance with ability to generate a profit. The firm has sufficient financial resources to support the proposed contract along with their projected work program.

AR 2196. Based on this Certificate of Competency determination, EPA re-awarded the contract to Coastal-Enviroworks on September 29, 2015. AR 2202. EPA notified Lawson of the re-award on the same day. AR 2364.

**Lawson's Second HUBZone Protest and SBA's Denial of This Protest**

On October 6, 2015, Lawson filed a second HUBZone protest alleging 1) that Coastal-Enviroworks counted toward its 35% residency requirement the three former Lawson employees, who, according to DHS, appeared to have been undocumented, and 2) that Coastal-Enviroworks forged [***] letter of intent. AR 2371, 2374-78. On October 21, SBA denied Lawson's second HUBZone appeal, stating:

> In this protest, Lawson once again alleges that Enviroworks is employing undocumented workers, based on a non-final letter of documentation from 2013. As noted in the Appeal letter, SBA is not the proper Agency with which to bring complaints about undocumented workers. As noted in the letter, none of the three employees were employed at the previous time of award, and Lawson provides no evidence that any of the three individuals are currently employed by Enviroworks.
>
> Lawson also alleges that [Coastal-Enviroworks] falsely claimed that [***] was its employee. As evidence of this Lawson says that [Coastal-Enviroworks] had a forged letter of intent from [***]. There is no evidence that [***] has ever been employed or be claimed as an employee for any component of [Coastal-Enviroworks.] The individual does not appear on payrolls previously submitted to SBA. Further, [Coastal-Enviroworks] submitted a[] letter of intent which is only submitted when the proposed individual is not employed by the entity submitting its bid.
>
> * * *
>
> Lawson is using the new award as an attempt to litigate matters that have already been resolved. The certificate of competency has already been issued, and the HUBZone eligibility of the awardee has already been decided and affirmed on appeal. As such, Lawson has not made any allegations or provided any facts that anything has changed since SBA determined that [Coastal-Enviroworks] met the HUBZone eligibility requirements. I am therefore dismissing the protest.

AR 2502.

**Lawson's GAO Protest**

On October 16, 2015, Lawson filed a protest with GAO, stating four grounds of protest. AR 2427. First, Lawson argued that Coastal-Enviroworks did not meet the "Key Personnel" factor because Coastal-Enviroworks "submitted a forged letter of intent" and a "false resume" for [***], rendering its proposal technically unacceptable. AR 2432. Second, Lawson argued that EPA improperly referred Coastal-Enviroworks' proposal to SBA for a Certificate of Competency determination because Coastal-Enviroworks submitted an incomplete proposal. AR 2433. Third, Lawson argued that SBA improperly issued a Certificate of Competency to Coastal-Enviroworks because Coastal-Enviroworks had an unsatisfactory record of integrity and business ethics and lacked technical skills. AR 2436-41. Finally, Lawson argued that EPA should not have conducted a pricing evaluation since Coastal-Enviroworks failed to meet technical acceptability standards. AR 2441.

> EPA sought summary dismissal of Lawson's GAO protest, arguing:
>
> The requirement for key personnel in this solicitation concerns the capability, competency and capacity of the offeror, and is an objective standard established by the Agency as a precondition to award. Because key personnel constituted a pass/fail technical evaluation factor under this solicitation, the decision of the Agency's TEP to fail [Coastal-Enviroworks] on that factor was one of responsibility that the Agency was required to refer to SBA.

11

AR 2509.

**GAO's Dismissal of Lawson's Protest**

On November 25, 2015, GAO dismissed the protest, finding:

Lawson's assertion that it was improper to refer the matter to the SBA for consideration under SBA's COC procedures is unavailing.  Where an agency finds that a small business is nonresponsible, the agency is required to refer the matter to the SBA for consideration under the COC procedures.  Federal Acquisition Regulation Subpart 19.6.  In a negotiated procurement, SBA referral is mandatory where the solicitation includes for evaluation on a pass/fail basis a criterion--such as key personnel qualifications--that is traditionally a responsibility-type factor, and the contracting agency determines that a small business's proposal should be rejected for failing that criterion.  <u>Docusort, Inc.</u>, B-254852, Jan. 25, 1994, 94-1 CPD ¶ 38 at 5-7; <u>Coastal Environmental Group, Inc.</u>, B-407563 <u>et al.</u>, Jan 14, 2013, 2013 CPD ¶ 30 at 6-7 (In sealed bids and negotiated procurements, key personnel experience requirements evaluated on a pass/fail basis are a matter of responsibility, not responsiveness.)  This is so because, in these circumstances, the agency is viewed as having made a nonresponsibility determination notwithstanding its use of and reliance on a technical evaluation criterion.  Here, the agency used a pass/fail evaluation methodology to determine that Coastal was technically unacceptable because its personnel were not qualified. EPA was therefore required to refer its nonresponsibility determination to SBA for consideration under SBA's COC procedures.

AR 3170-71.  GAO rejected Lawson's challenge to Coastal-Enviroworks' compliance with the residency requirements for HUBZone businesses, finding that Lawson failed to factually support Coastal-Enviroworks' alleged employment of undocumented workers.  AR 3172.

**Lawson's Appeal of SBA's Denial of Its Second HUBZone Protest**

On October 28, 2015, Lawson appealed SBA's October 6, 2015 denial of its second HUBZone protest. AR 3173.  Lawson argued that SBA's dismissal was improper because it was based on a decision "that these matters have already been resolved," and this HUBZone challenge concerned the re-award made to Coastal-Enviroworks on September 29, 2015.  AR 3178.  This appeal was still pending at the time that Lawson filed this lawsuit, but SBA issued its decision on February 22, 2016.  Def.'s Mot. for J. on the AR A1.[3]  SBA dismissed Lawson's appeal, finding that Lawson provided no evidence to contradict SBA's previous determinations that Coastal-Enviroworks met the 35% employee residency requirement to qualify as a HUBZone small business concern. <u>Id.</u> at A3.

---

[3] By Order dated March 7, 2016, the Court added SBA's February 22, 2016 decision to the AR.

**Lawson's Complaint**

On December 18, 2015, Lawson filed this lawsuit, challenging the agency's award to Coastal-Enviroworks, including its determination of technical acceptability, its referral of Coastal-Enviroworks' technical proposal to SBA for a Certificate of Competency decision, SBA's issuance of a Certificate of Competency, and SBA's confirmation of Coastal-Enviroworks' HUBZone status. Compl. ¶ 2. Defendant agreed to stay performance of the contract until March 30, 2016. Pl.'s Notice (Dec. 21, 2015).

## Discussion

**Jurisdiction and Standard of Review**

This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's standard of review for an agency action. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Under Rule 52.1 of the Rules of the Court of Federal Claims, the parties are limited to the AR, and the Court makes findings of fact as if it were conducting a trial on a paper record. See id. at 1354. Looking to the AR, the Court must determine whether a party has met its burden of proof based on the evidence in the record. Id. at 1355.

This Court will set aside an agency's procurement decision if the agency abused its discretion or acted arbitrarily, capriciously, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (2012); Adams & Assocs., Inc. v. United States, 741 F.3d 102, 105-06 (Fed. Cir. 2014); Ala. Aircraft Indus., Inc. – Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009). In order to obtain relief, if this Court finds that the agency's actions were contrary to law or regulation, Plaintiff must also show that the violation was prejudicial. Bannum, 404 F.3d at 1351. This Court reviews SBA competency determinations under the same arbitrary and capricious standard of review. CSE Constr. Co. v. United States, 58 Fed. Cl. 230, 248 (2003).

**EPA Properly Referred Coastal-Enviroworks to SBA for a Certificate of Competency Determination**

Plaintiff argues that, upon finding that Coastal-Enviroworks failed to meet the Solicitation's key personnel requirement, EPA should have disqualified Coastal-Enviroworks' proposal as nonresponsive instead of referring the matter to SBA for a Certificate of Competency determination. Plaintiff's argument lacks merit.

As the Court of Federal Claims recognized, "where traditional responsibility factors are employed as technical evaluation criteria and the evaluation renders an offeror's proposal flatly ineligible for award, the agency has effectively made a determination that the small business offeror is not a responsible contractor capable of performing the solicitation requirements." Optimization Consulting, Inc. v. United States, 115 Fed. Cl. 78, 100 (2013) (internal citation and quotation marks omitted). In those circumstances, the agency must refer the matter of the firm's responsibility to SBA for a Certificate of Competency determination. Id.; PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 546 (2010) (finding that, where "responsibility-type concerns" result in an offeror's exclusion from the competition, "a de facto non-responsibility

determination has been made and, in the case of a small business, referral to the SBA is required").

Here, the Key Personnel technical requirement that Coastal-Enviroworks failed was clearly a traditional responsibility factor that entailed the capacity and competency to perform the contract. FAR 9.104-3(e) expressly identifies "necessary organization, experience," and "technical skills" of a prospective contractor as elements of responsibility. So too, FAR 104-3(a) includes "personnel" in the litany of "required resources" necessary to perform the contract. The Solicitation, Factor 2, expressly called out a "Site Superintendent" as a critical employee described as the "on-site point person overseeing all the project work . . . required to be on site throughout the project while work is occurring." AR 76. As such, this technical evaluation factor encompassed a traditional responsibility factor - - the offeror's ability to meet staffing and management requirements. <u>Capitol Creag LLC</u>, B-294958.4, 2005 WL 241279, at *5 (Comp. Gen. Jan. 31, 2005); <u>Clegg Indus., Inc.</u>, B-242204, B-242204.3, 1991 WL 191181, at *2 (Comp. Gen. Aug. 14, 1991).

Because Coastal-Enviroworks' failure on a "responsibility-type" technical factor would have excluded Coastal-Enviroworks from the competition, both statute and regulation required EPA to refer Coastal-Enviroworks' proposal to SBA for a Certificate of Competency determination. The Small Business Act, in relevant part, provides:

> (b) It shall also be the duty of the Administration and it is empowered, whenever it determines such action is necessary –
>
> (7)(A) To certify to Government procurement officers, and officers engaged in the sale and disposal of Federal property, with respect to all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern or group of such concerns to receive and perform a specific Government contract. A Government procurement officer or an officer engaged in the sale and disposal of Federal property <u>may not</u>, for any reason specified in the preceding sentence <u>preclude any small business concern or group of such concerns from being awarded such contract without referring the matter for a final disposition to the Administration</u>.

15 U.S.C. § 637(b)(7)(A) (2012) (emphasis added). The FAR reaffirms the mandatory obligation of the agency to refer the matter of the prospective small business concern's staffing capability to SBA. FAR 19.602-1 provides:

> (a) Upon determining and documenting that an apparent successful small business offeror lacks certain elements of responsibility (including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, tenacity, and limitations on subcontracting . . .), the contracting officer shall—
>
> (1) Withhold contract award (see 19.602–3); and

> (2) Refer the matter to the cognizant SBA Government Contracting Area Office (Area Office) serving the area in which the headquarters of the offeror is located, in accordance with agency procedures . . . .

48 C.F.R. § 19.602-1(a)(1)-(2) (2005); see Sims v. United States, 125 Fed. Cl. 119, 123 n.1 (2016) ("Under the Small Business Act, 15 U.S.C. § 631 et seq. and implementing regulations, when a CO finds that an apparently successful small business offeror lacks certain elements of responsibility, including the capacity, competency, or tenacity necessary to perform the contract, the contacting officer must refer the offeror to the SBA.") (internal citation and quotation marks omitted).[4]

This is not a gray area. In this lowest priced, technically acceptable procurement, EPA's determination that Coastal-Enviroworks failed a responsibility-type factor outright - - Key Personnel - - eliminated Coastal-Enviroworks from the competition and triggered EPA's obligation to refer the matter to SBA under its Certificate of Competency procedure. AR 75; 48 C.F.R. § 15.101-2(b)(1) (2009).[5]

### EPA Reasonably Reevaluated Coastal-Enviroworks' Proposal

Plaintiff challenges EPA's decision to reevaluate Coastal-Enviroworks' proposal after Lawson's agency-level protest was sustained, claiming that EPA should have disqualified Coastal-Enviroworks' proposal as nonresponsive. The Court denies this ground of protest. As a result of the agency protest, EPA decided to terminate Coastal-Enviroworks' contract and re-evaluate Coastal-Enviroworks' proposal based on new information concerning Coastal-Enviroworks' capability to perform. Specifically, in the agency protest, EPA received new information directly bearing on Coastal-Enviroworks' responsibility, illuminating inaccuracies in Coastal-Enviroworks' proposed Site Superintendent's resume and suggesting that its proposed superintendent, [***], had not signed the Letter of Commitment agreeing to work for Coastal-Enviroworks. Lawson submitted two declarations from [***] stating that he "did not give [his] permission or sign a letter of intent to be employed by Enviroworks, L.L.C. for the Washington County Lead Project," and that "[a]ny documentation stating or indicating otherwise has been

---

[4]   Plaintiff relies on Manus Medical LLC v. United States, 115 Fed. Cl. 187 (2014) to argue that Coastal-Enviroworks' proposal should have been rejected as nonresponsive. In Manus, the agency eliminated the lowest-price offeror from the competition because the offeror failed to submit a complete proposal and omitted information necessary for the evaluation of two technical factors. 115 Fed. Cl. at 192. As such, the agency could not make a determination on technical acceptability and rejected the proposal as deficient for omitting required information. Here, in contrast, the agency could and did evaluate Coastal-Enviroworks' technical proposal on a responsibility-type factor and failed Coastal-Enviroworks for noncompliance, requiring a referral to SBA.

[5]   GAO similarly upheld EPA's referral of Coastal-Enviroworks to SBA under its Certificate of Competency procedure. GAO reasoned that the agency was viewed "as having made a nonresponsibility determination notwithstanding its use of and reliance on a technical evaluation criterion," because it used a pass/fail evaluation methodology to determine that Coastal-Enviroworks was technically unacceptable for failing the key personnel qualification - - traditionally a responsibility-type factor. AR 3171.

15

fraudulently prepared." AR 1402, 1409. In addition, Lawson submitted a declaration from its president stating that [***] had been employed by Lawson since July 1, 2013, as well as Lawson's payroll records for [***] for the period of July 5, 2013 through June 5, 2015. AR 1403, 1411-47.

Although there were contradictory statements submitted by Coastal-Enviroworks regarding [***] intentions, it was reasonable for the agency to accept [***] own testimony that he intended to work for Lawson, his present employer. See AR 1484-1533 (affidavits of Marcos Mateus, President of Enviroworks, and Jose Cardenas, an Enviroworks employee, stating that [***] had repeatedly expressed his interest in working for Coastal-Enviroworks as the Site Superintendent if Coastal-Enviroworks were awarded the contract; and an affidavit of Arturo Flores, an Enviroworks employee, stating that he spoke to [***] in person and that [***] "gave Enviroworks permission to sign the commitment letter on his behalf for the Site Superintendent position for the RFP;" and text message exchanges between [***] and Messrs. Mateus and Cardenas reflecting [***] interest in working with Coastal-Enviroworks on this project).

Prior to receiving the information disclosed during the protest, EPA had an incomplete picture of what [***] projected employment status vis-à-vis Coastal-Enviroworks was. Indeed, as a result of evidence garnered in the agency protest, EPA became aware of its apparent misimpression that [***] was committed to work for the designated awardee Coastal-Enviroworks. Once [***] status as a key employee of Coastal-Enviroworks became questionable, it was eminently reasonable for the agency to take the new information into account and reassess Coastal-Enviroworks' ability to meet the Key Personnel requirement before proceeding with award.

"Contracting officers are provided broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition" in a procurement. Excelsior Ambulance Serv., Inc. v. United States, 124 Fed. Cl. 581, 586 (2015) (internal citation and quotation marks omitted). Here, the agency reasonably re-evaluated Coastal-Enviroworks' proposal to consider negative information that surfaced during the agency protest and directly impacted Coastal-Enviroworks' responsibility and the accuracy of the basis for award.

**EPA Properly Accepted the August 2, 2015 Affidavit**

Plaintiff argues that EPA abused its discretion, because by accepting [***] August 2, 2015 affidavit, EPA "essentially entered into discussions" with Coastal-Enviroworks. Plaintiff contends that by accepting the August 2, 2015 affidavit, EPA afforded Coastal-Enviroworks "the official opportunity to modify its proposal" even though Coastal-Enviroworks "had already had the official opportunity to respond." Pl.'s Mot. for J. on the AR 26. However, Coastal-Enviroworks was not able to amend its proposal by submitting the August 2, 2015 affidavit, because as of August 2, Coastal-Enviroworks had already failed its technical re-evaluation. EPA terminated its original award to Coastal-Enviroworks on July 15, 2015, following Lawson's agency-level protest. AR 1557. Between July 20, and July 29, 2015, the TEP reconvened to reevaluate Coastal-Enviroworks' proposal. AR 1560-61. On July 29, 2015, before receiving [***] August 2 affidavit, the TEP advised the Contracting Officer that Coastal-Enviroworks failed the Key Personnel technical criterion. Indeed, as a result of its reevaluation, the TEP concluded that the information received during the agency protest "disqualified [Coastal-

Enviroworks'] proposed [Site Superintendent] from consideration on this project." AR 1564. Only after Coastal-Enviroworks had been "disqualified" did Coastal-Enviroworks submit the August 2 affidavit - - while EPA was in the process of referring the matter to SBA.

Contrary to Plaintiff's argument, the submission of this additional evidence in the context of a responsibility determination - - here SBA's COC determination - - does not constitute discussions. In general, because responsibility determinations are made at the time of award, an offeror may present evidence subsequent to proposal submission but prior to award to demonstrate the bidder's responsibility. Dyncorp Int'l LLC v. United States, 76 Fed. Cl. 528, 547 (2007) (internal citation and quotation marks omitted); see Afghan Am. Army Servs. Corp. v. United States, 106 Fed. Cl. 714, 726 (2012) (finding that when the contracting officer made a nonresponsibility determination based on allegations of forgery but did not permit the offeror to respond to those allegations, the contracting officer's "rush to judgment without obtaining a more complete picture of what transpired was arbitrary and capricious").

**EPA Submitted Proper and Sufficient Evidence to SBA for the Certificate of Competency Determination**

Plaintiff argues that Defendant committed "clear error" when it provided SBA with [***] August 2, 2015 affidavit for Coastal-Enviroworks' Certificate of Competency determination because the TEP never considered this information itself. Pl.'s Mot. for J. on the AR 34. Plaintiff appears to argue that SBA is required to limit its evaluation of a small business concern's responsibility to that information considered by EPA in conducting its technical evaluation. Id. at 36. This argument is contrary to governing regulation. In considering a COC referral, SBA may independently evaluate the COC applicant for all elements of responsibility. 13 C.F.R. § 125.5(f)(1) (2013) ("The COC review process is not limited to the areas of nonresponsibility cited by the contracting officer. SBA may, at its discretion, independently evaluate the COC applicant for all elements of responsibility . . . . SBA may deny a COC for reasons of nonresponsibility not originally cited by the contracting officer.").

Importantly, withholding [***] August 2, 2015 affidavit here would have given SBA an incomplete and inaccurate picture of what transpired. Directly contrary to the record as it then stood, [***] August 2, 2015 affidavit indicated that he had authorized Coastal-Enviroworks to sign his name on the letter of intent and that his March 20, 2015 declaration and June 9, 2015 affidavit, suggesting the contrary, had both been executed under duress. AR 1586. In short, [***] completely changed his testimony - - testimony that was crucial evidence for SBA to consider in assessing whether Coastal-Enviroworks' proposal of [***] as its Site Superintendent was accurate and viable. At that point, it would have been arbitrary and capricious for the Contracting Officer to have withheld updated information directly bearing on Coastal-Enviroworks' responsibility.

In another vein, Plaintiff argues that in referring Coastal-Enviroworks to SBA for a COC determination, EPA unlawfully withheld "evidence" regarding the alleged undocumented worker suggesting that Coastal-Enviroworks did not meet the 35% HUBZone residency requirement. Pl.'s Mot. for J. on the AR 31-33. The Court rejects this argument. As explained below, there was no probative "evidence" supporting Lawson's allegation regarding Coastal-Enviroworks' undocumented worker. Moreover, EPA did not question Coastal-Enviroworks' responsibility based upon issues with Coastal-Enviroworks' HUBZone status. See FAR 19.602-1(c)(vi)

(requiring the agency to provide SBA with any "justification and documentation used to arrive at the nonresponsibility determination.").

**SBA Reasonably Found That Coastal-Enviroworks Met the HUBZone Residency Requirement**

Plaintiff argues that Coastal-Enviroworks was improperly certified as a HUBZone small business because SBA unlawfully counted both an undocumented worker and [***] among Coastal-Enviroworks' employees for the 35% employee HUBZone residency requirement, improperly boosting Enviroworks' total number of HUBZone resident employees. The record, however, contains no evidence that SBA considered [***] to be an employee of Coastal-Enviroworks. On the contrary, as SBA's HUBZone director explained in the October 21, 2015 denial of Lawson's second HUBZone protest:

> There is no evidence that [***] has ever been employed or . . . claimed as an employee for any component of [Coastal-Enviroworks]. The individual does not appear on payrolls previously submitted to SBA. Further, [Coastal-Enviroworks] submitted [a] letter of intent which is only submitted when the proposed individual is not employed by the entity submitting its bid.

AR 2502.

Nor does the record support Plaintiff's allegation that one of Enviroworks' employees was an undocumented worker at the time of offer and may have been counted as a HUBZone resident. Plaintiff's sole support for this allegation is DHS' October 9, 2013 "Notice of Suspect Documents," informing Lawson that it "appear[ed]" that three of Lawson's employees were not authorized to work in the United States. AR 1549. Relying on DHS' "Notice of Suspect Documents," which was not a finding that the workers were undocumented, Lawson surmises that an Enviroworks employee who shared the same name as a Lawson employee mentioned in the Notice must actually have been both undocumented and improperly counted in Enviroworks' mix of HUBZone residents. AR 1590.

Plaintiff's speculation that an undocumented worker was erroneously included as an Enviroworks HUBZone resident at the time of offer is not supported by the record and does not render SBA's determination arbitrary or capricious. Rather, the record demonstrates that, during its investigation of Enviroworks' HUBZone status, SBA conducted a thorough review of documentation on the residency status of Enviroworks' employees, including records showing the home address for each of Enviroworks' HUBZone resident employees at the time of offer and award, a HUBZone map determination for each of Enviroworks' employees residing in a HUBZone at the time of offer and award, driver's licenses, declarations signed under penalty of perjury, payroll records covering the four-week periods leading up to and including the dates of offer and award, and pertinent state and federal tax filings. Based on this detailed record, SBA concluded that four out of 11 Enviroworks employees met the HUBZone residency requirements.

Although Plaintiff contends that SBA did not consider the DHS Notice, SBA's Associate Administrator for Government Contracting and Business Development squarely addressed this issue in denying Plaintiff's latest HUBZone protest, stating:

18

> The assertions made on appeal regarding undocumented workers (DHS letter) and/or unemployed workers ([***]) do not refute the fact that evidence provided by [Coastal-Enviroworks] to SBA for purposes of determining eligibility, specifically, the employee 35 percent residency requirement, demonstrates compliance with the HUBZone program requirements.

Def.'s Mot. for J. on the AR A3.  Based on the thorough documentation of its employees' residency status that Enviroworks provided during SBA's HUBZone investigation, it was reasonable for SBA to conclude that Enviroworks met the 35% residency requirement to qualify for HUBZone status.

### SBA's Decision to Grant a Certificate of Competency to Coastal-Enviroworks Was Reasonable

Plaintiff contends that SBA abused its discretion in granting Coastal-Enviroworks a COC.  In reviewing a COC determination by SBA, the Court accords SBA certain deference based on "the unique expertise that SBA unquestionably possesses in the area of business responsibility determinations." United Enter. & Assocs., 70 Fed. Cl. at 31 (internal alterations, citation, and quotation marks omitted).  This Court will overturn an SBA competency determination only if it appears by a preponderance of the evidence that SBA's decision had no rational basis or violated an applicable procurement statute or regulation that was prejudicial to the protester.  CSE Constr. Co, 58 Fed. Cl. at 248 (citing Stapp Towing Inc., 34 Fed. Cl. at 306).

Here, SBA's decision to grant Coastal-Enviroworks a COC was reasonable, consistent with statute and regulation, and supported by the evidence.  SBA determined:

> The firm has demonstrated the technical ability to perform on this procurement.  Plant, facilities, and equipment factors are favorable.  Material availability/subcontractor support has been determined to be acceptable.  The intended site superintendent has confirmed that he gave permission to the applicant to use his resume and to sign the letter of intent on his behalf.  Furthermore, he will be the site superintendent if the applicant were to receive the contract award.

AR 2196.  This conclusion was supported by [***] most recent affidavit testimony recanting his March 20, 2015 declaration and June 9, 2015 affidavit and affirming that he was committed to work for Coastal-Enviroworks.

### Conclusion

Plaintiff's motion for judgment on the Administrative Record is **DENIED**, and Defendant's cross-motion for judgment on the Administrative Record is **GRANTED**.  The Clerk is directed to enter judgment accordingly.

                                                 s/Mary Ellen Coster Williams
                                                 **MARY ELLEN COSTER WILLIAMS**
                                                 **Judge**